IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.    1:23-cr-00061-BKS |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | **GOVERNMENT'S          SENTENCING** |
| **LUKE KENNA, a.k.a. "Lt.,"** | ) | **MEMORANDUM** |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

The United States of America, by and through its counsel of record, the United States

Attorney for the Northern District of New York, hereby requests that the Court sentence the

defendant Luke Kenna according to the Sentencing Guidelines, to include a high-end Guideline

term of imprisonment, followed by three years of supervised release. Such a sentence would be

sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18

U.S.C. § 3553(a).

### I.       FACTUAL BACKGROUND

On August 17, 2023, the defendant pled guilty to a two-count superseding information

charging Conspiracy to Commit an Armed Bank Robbery, in violation of 18 U.S.C. §§ 371,

2113(a), (d), and Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§

922(g)(9), 924(a)(8). Dkt. 59 (Superseding Information); Dkt. 60 (Plea Agreement).

In pleading guilty to Count 1, Kenna admitted that between November 14 and November

27, 2022, he agreed to and planned to commit an armed bank robbery at a bank branch in

Johnstown, New York, with two co-conspirators, Michael Brown, Jr. a.k.a. "Russ," and Brian

Tierney a.k.a. "Wodanaz." Dkt. 60 at 4-6. Kenna initiated and organized the conspiracy by creating

a chat labeled the "ᛋᛋ [SS] Screenwriters Guild," which Brown and Tierney joined. *Id.* Kenna

later conducted surveillance and took photographs and videos of the bank, and then purchased items, including weapons, to commit the robbery. *See id.*; Dkt. 79 (PSIR) ¶¶ 7-58. Brown and Tierney also purchased weapons and precursors to commit the robbery, and Brown travelled from Pennsylvania on November 26, 2022, to surveil the bank with Kenna. PSIR ¶¶ 51-52, 54-57.

Kenna and his conspirators planned to use firearms and other weapons to rob the bank by force and intimidation. For example, on November 17, 2022, Kenna sent to Brown a chat message, "I have one clean p80, can you procure 2 more for the play?" referring to a Polymer 80, a type of Glock-style handgun, that Kenna planned to use, to which Brown responded, "Copy. I'll work on the p80s." PSIR ¶ 40. Later, on November 21, 2022, Kenna sent a message to his conspirators, referring to the knives he planned to use to commit the robbery and intimidate the female bank tellers, that stated in relevant part, "I have 2 smaller tools and sharp stuff is for the girls." PSIR ¶ 47. On November 26, 2022, Kenna was stopped for a traffic violation and was arrested after officers found that he had a loaded firearm in his waistband while he was wearing all black clothing and a ballistic vest and was equipped with a radio transmitting/jamming device. PSIR ¶ 26. In his backpack in the passenger seat of the car, officers found medical equipment, multiple knives, scarves, extra gloves, and a Faraday bag containing his cell phone, among other items. PSIR ¶ 28.

In pleading guilty to Count 2, Kenna also admitted that he possessed a rifle on November 6, 2022, after a prior conviction of a misdemeanor crime of domestic violence. PSIR ¶¶ 15-18.

The defendant has been detained since his arrest, first in state and then federal custody, since November 26, 2022. PSIR ¶ 6.

## II.    RESPONSE TO THE DEFENDANT'S OBJECTIONS TO THE PSIR

The United States adopts the facts contained in the Presentence Investigation Report prepared by the U.S. Probation Office, which in turn relied upon law enforcement reports and

related discovery provided by the United States. Despite the defendant's objection to all mentions of "Nazi" in the PSIR, there is sufficient evidence to prove by a preponderance that the defendant had an ethnically motivated violent extremist ideology aligned with white supremacy and neo-Nazi ideologies. For example, the defendant had a Nazi Eagle flag[1] on a wall in his residence, which was found after his arrest, as seen in the photograph below:



Moreover, Kenna ran a business named "Tyr Tactical Training" in Gloversville, New York; "Tyr" is a Norse pagan rune that was appropriated by the Nazi "SS" that is frequently used by neo-Nazis today. *See* Anti-Defamation League, https://www.adl.org/resources/hate-symbol/tyr-rune. Kenna was also observed posting on Telegram channels associated with the

---

[1] "Following World War II, the symbol was appropriated by neo-Nazis and other white supremacists worldwide, with many variations." *See* Anti Defamation League, Hate Symbols / Nazi Eagle https://www.adl.org/resources/hate-symbol/nazi-eagle (last visited May 31, 2024).

"Church of Aryanity," which describes itself as a "an organized religion for White Aryans only" and is "open to Men and Women of all ages, (non-Jewish) White Aryan descent only." *See* Aryanity, https://aryanity.com/join-the-church-of-aryanity (last visited May 31, 2024); PSIR ¶ 10. Kenna's wife was also associated with a known hate group and had been seen displaying the Sonnenrad symbol, another hate symbol appropriated by neo-Nazis[2] in her store. PSIR ¶ 98. Kenna's co-conspirators likewise had been observed in online chat forums, possessed paraphernalia, and admitted having an affiliation with neo-Nazi and racially motivated violent extremist ideologies. PSIR ¶¶ 19-21, 37, 56-57.

Kenna even made numerous antisemitic and white supremacist-aligned comments in the context of the offense with his co-conspirators, including in the chat that was labeled ""ᛋᛋ [SS] Screenwriters Guild," an unmistakable reference to the paramilitary organization that was responsible for enforcing the racial, white-supremacist, and extremist ideologies of Adolf Hitler and Nazi Germany.[3] In those chats, on November 14, 2022, Kenna sent a recorded audio message to Tierney, stating, "Yeah brother, without a doubt. That's the thing. We have that superior Aryan mindpower. That we could pull this type of thing off with. Because that's how dudes like the Order did it."[4] On November 18, 2022, Kenna sent a message to Brown, stating, "Looks like we're getting this paper jew money while it lasts. Just in time to invest into bigger and better things." On November 22, 2022, Kenna sent Tierney a message, stating in relevant part, "Yeah definitely I'm

---

[2] Anti-Defamation League, Hate on Display / Sonnenrad, https://www.adl.org/resources/hate-symbol/sonnenrad (last visited May 31, 2024).

[3] *See generally* Adrian Weale, SS: A New History (Abacus, 2012); History.com Editors, *The SS*, History.com (Jan.7, 2019) https://www.history.com/topics/world-war-ii/ss.

[4] The "New Order" of Europe was the political and social system that Nazi Germany wanted to impose on the areas of Europe that it conquered and occupied; the term originated when Adolf Hitler proclaimed on January 30, 1941, "The year 1941 will be, I am convinced, the historical year of a great European New Order!" Jewish Virtual Library, Adolf Hitler: Speech at the Berlin Sports Palace (Jan. 30, 1941), https://www.jewishvirtuallibrary.org/hitler-speech-at-the-berlin-sports-palace-january-30-1941 (last visited May 31, 2024).

sure there's a lot of fat yamaka wearing motherfuckers with bags of Chas at those things [baseball card conventions].… Always opportunity to take from those more 'fortunate.'" Kenna's denial of any affiliation with Nazis, other hate groups, or other racially or ethnically motivated violent extremists belies his own words and conduct.

### III.    APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

#### a.  Statutory Provisions

Count 1 is a Class D felony that carries a maximum term of imprisonment of 5 years and Count 2 is a Class C felony that carries a maximum term of 10 years. 18 U.S.C. §§ 371, 924(a)(8). The Court may also impose a maximum fine of $250,000 and a term of post-imprisonment supervised release of up to three years for both offenses. 18 U.S.C. §§ 3571(b), 3583(b)(2).

Each count requires a special assessment of $100, for a total of $200. *See* 18 U.S.C. § 3013.

#### b.  Guidelines Provisions

##### i.   Criminal History Category

The United States agrees with Probation that Kenna has a total criminal history score of two, which establishes a criminal history category of II. PSIR ¶ 87.

##### ii.  Offense Level Computation

The United States agrees with the Probation Office's offense level computation, including the application of two upward adjustments because the object of the offense was a financial institution, and because the intended offense involved the possession and/or brandishing of a firearm. PSIR ¶¶ 64-66. The United States also agrees that a decrease in the offense level is warranted because the conspiracy was not completed. PSIR ¶ 67.

The United States agrees with Probation that the defendant is entitled to a two-level downward adjustment of the offense level for acceptance of responsibility pursuant to U.S.S.G. §

3E1.1(a), and hereby moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for timely notifying authorities of his intention to enter a plea of guilty. PSIR ¶¶ 73-74. As a result, the total offense level should be 21, before the application of any other adjustment or downward departure. PSIR ¶ 75.

### c. Guidelines Calculations

The Government agrees with the Probation Office's guideline calculations. Based upon a total offense level of 21, and a criminal history category of II, before any other adjustment or departure, the Guidelines recommend 41 to 51 months of imprisonment, between 1 and 3 years of supervised release, and a fine between $15,000 to $150,000. PSIR ¶¶ 116, 122, 127.

## IV.   GOVERNMENT'S SENTENCING RECOMMENDATION

The United States requests that the Court sentence the defendant according to the Sentencing Guidelines, including a term of imprisonment on the high-end of the applicable Guideline range, and a term of three years of post-imprisonment supervised release. Based on his apparent inability to pay, the government does not recommend that the Court impose a fine. *See* PSIR ¶ 114; U.S.S.G. § 5E1.2(a) (fine may be waived where "defendant establishes that he is unable to pay and is not likely to become able to pay any fine").

### A.  The Nature, Circumstances, and Seriousness of the Offense

The requested sentence to be imposed should reflect the nature and seriousness of the defendant's conspiracy to commit an armed bank robbery and his possession of firearms as a convicted felon. The seriousness of these crimes is reflected in the sentencing enhancements applied in this case—namely, that the defendant intended to use firearms to commit the robbery, and that the defendant intended to rob a financial institution.

As an initial matter, armed bank robbery—the object of the conspiracy—is a violent felony and considered a "crime of violence" in other contexts. *See Killion v. United States*, 728 F. App'x 19, 21 (2d Cir. 2018) (holding that federal armed bank robbery was a "violent felony" under Armed Career Criminal Act); *United States v. Chimurenga*, 760 F.2d 400 (2d Cir. 1985) (Under Bail Reform Act allowing pretrial detention of defendant charged with "crime of violence," holding that conspiracy to commit armed robbery is "crime of violence"); *Young v. United States*, 22 F.4th 1115, 1123 (9th Cir. 2022) ("aiding and abetting a crime of violence, such as armed bank robbery, is also a crime of violence"). That designation in other contexts reflect the dangers that an armed bank robbery poses, including a significant risk of injury to innocent bystanders being held at gun point. Here, Kenna and his conspirators contemplated using knives and unserialized firearms, to intimidate and coerce, and potentially even restrain with zip ties, employees at the Community Bank in Johnstown to steal money. Though the entire conspiracy lasted less than a month before it was cut short by Kenna's arrest, Kenna took significant overt acts and concrete steps towards accomplishing the conspiracy's objective: Kenna recruited Brown and Tierney to join the conspiracy, formed the chat, proposed the planned target bank and date, proposed the list of items needed to accomplish the goal, surveilled the bank, and even took photographs and videos of his reconnaissance. PSIR ¶¶ 3, 32-50.

The defendant's shared neo-Nazi and white supremacist ideology with his conspirators, which he remarkably denies, contributed to the offense, and highlights his danger to the community. Indeed, racially motivated violent extremism, including white supremacist ideologies like Kenna's, has been deemed the "most lethal terrorist threat to our homeland today" as the "intelligence community has assessed that domestic racially and ethnically motivated violent extremist groups, which advocate for the superiority of the White race, have, 'the most persistent

and concerning transnational connections' of all U.S. domestic violent extremists." *Racially and Ethnically Motivated Violent Extremism: The Transnational Threat, Before the H. Sub. Comm. on Intel. and Counterterrorism of the Comm. On Homeland Sec.*, 117th Cong. 1 (2021) (statement of Hon. Elissa Slotkin, Rep. from State of Mich.).

While the offense conduct was not a hate crime, nor was it overtly racially motivated or intended to further Kenna's extremist views, it was motivated by greed and financial gain. That motivation is underscored by his own brazen words, written in his notebook: "I am flat broke with nothing but a gun and a dream. I'm going to fulfill my destiny one way or another. And It's going to take bold action to do so. I have already set in to motion a plan to start it all off. I'm writing a 'screen play' on a movie about 3 guys that rob a small bank and set off with a large amount of cash and get set up for things to come so as to keep their families safe & sound, Protected." PSIR ¶ 29 (typos original). Kenna set this desperate and ill-conceived plan in motion based on pure greed, aware of the significant dangers and levels of criminality it required. Moreover, he took significant steps to evade detection by law enforcement, including conducting surveillance and buying radio jammer device and weapons.

The defendant played a foundational role in organizing the conspiracy, including by recruiting the other two participants in the conspiracy, both of whom did not live in the immediate area around Johnstown, New York. Indeed, the Court could conclude that the defendant was an organizer or leader in the operation for purposes of a sentencing enhancement under U.S.S.G. § 3B1.1 based on his aggravating role and participation in the overt acts involved in the conspiracy. Regardless of whether that enhancement is applied here, the defendant played the most significant role in the bank robbery conspiracy among the defendants, and merits, at minimum, a high-end Guideline sentence as a result.

The defendant was also convicted under Count 2 for possessing a rifle in early November 2022, and later possessed a separate, loaded, unserialized pistol when the Gloversville Police Department arrested him on November 26, 2022. PSIR ¶¶ 14, 53, 26. Unserialized pistols, also known as "ghost guns," like the one Kenna possessed, are particularly dangerous because they are difficult for law enforcement to trace, and unfortunately, are becoming increasingly popular among criminals.[5] New York State has recently made efforts to bring self-manufactured firearms under a serialization regime and to criminalize their possession. *See* NYPL § 265.61 (Criminal sale of a ghost gun in the first degree). Even if the defendant had not separately conspired to commit an armed bank robbery, the defendant's possession of firearms as a prohibited person would have yielded a substantial Guideline range and merited a significant sentence on its own. The defendant's possession of multiple firearms, and his encouragement of both Brown and Tierney, each prohibited persons as well, to obtain such firearms too, shows the significant dangers that his offense conduct poses to the gun violence epidemic nationwide.

## B. The History and Characteristics of the Defendant

The defendant has several arrests and convictions that suggest some risk of recidivism and risk of danger to the community. PSIR ¶¶ 80-86. Most significantly, he was convicted of an assault in the third degree (his prior misdemeanor crime of violence) after strangling his wife with his hands while under the influence. PSIR ¶¶ 86. Kenna also had an order of protection in place from November 2019 until November 2022, which means that Kenna was separately prohibited from

---

[5] Morgan McKay, Exclusive: Ghost guns on the rise and how to spot them, Fox 5 NY, (Jan. 25, 2024). https://www.fox5ny.com/news/ghost-guns-on-the-rise-and-how-to-spot-them; Bureau of Alcohol, Tobacco, Firearms and Explosives, *What We Do, Mission Areas, Firearms, Privately Made Firearms*, https://www.atf.gov/firearms/privately-made-firearms (last updated Aug. 4, 2023) ("From 2016 through 2021, there were approximately 45,240 suspected privately made firearms reported to ATF as having been recovered by law enforcement from potential crime scenes, including 692 homicides or attempted homicides.").

possessing firearms by virtue of his order of protection in early November 2022 as well. PSIR ¶ 78. Indeed, though reported records are currently limited, there was also an arrest for possession of contraband while he's been in jail, PSIR ¶ 89, which presents an additional reason that the defendant may pose a danger upon his release and suggests that an extended period of supervision may be needed to adequately protect the community and facilitate his rehabilitation.

The defendant also has significant substance abuse issues, including a history of abusing alcohol (including prior driving while ability impaired arrests and convictions), along with abuse of various substances including cocaine, opiates, and heroin, as well as use of other drugs such as LSD and ecstasy. PSIR ¶ 106. He has completed various treatment programs, including completing a program one month prior to his arrest, but those programs did not prevent the defendant from engaging in criminal activity. PSIR ¶ 107-08. Given his extensive history of alcohol and substance abuse, Kenna poses a greater risk of recidivism if his addictions are untreated or even insufficiently treated, and warrants imposing special conditions and treatment for any period of supervision imposed to ensure that his rehabilitation is being adequately monitored. *See* PSIR at 39.

The defendant's mental and emotional health may also contribute to his criminal activity given that he has reported certain significant mental health issues, PSIR ¶¶ 102-105, which, if left untreated, could also contribute to his recidivism risk. Accordingly, the Government also recommends that the Court impose special conditions for the evaluation and treatment of his mental health during any term of supervised release, which will help to address any mental health issues he may face as he re-enters the community and assist in his rehabilitation. *See* PSIR at 39.

## C. Respect for the Law, Just Punishment, and Deterrence

A Guideline term of imprisonment will also promote respect for the law, provide just punishment, and provide both specific deterrence to the defendant and general deterrence to the

population at large. *See* 18 U.S.C. § 3553(a)(2). The requested sentence will serve as a general deterrent to those who attempt to commit bank robberies and to possess firearms while prohibited from doing so. Those would-be criminals need to know that they can conspire to commit a dangerous armed bank robbery without being met with significant consequences.

It will also serve as a specific deterrent to protect the public from the future crimes that Kenna would commit. If not for his arrest, Kenna likely would have gone through with the bank robbery in January 2023, causing significant financial losses to the bank, as well as instilling fear, terror, and potentially other injuries to the victimized bank tellers and witnesses, as well as the significant resources from law enforcement that would have been devoted to identifying the perpetrators. Indeed, even apart from the bank robbery, there is also evidence that he would have robbed a restaurant where he used to work the night that he was arrested as well. *See* PSIR ¶ 49 (noting a chat between Brown and Kenna where Kenna expressed wanting to rob a former restaurant where he worked on the night when Brown visited).

A guideline prison sentence also reflects the appropriate sentencing range established by the Sentencing Guidelines and avoids unwarranted sentencing disparities among defendants. "[I]n the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 89 (2007); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Moreover, within-Guidelines sentences promote Congress's goal in enacting the Sentencing Reform Act: "to diminish unwarranted sentencing disparity." *Rita v. United States*, 551 U.S. 338, 354 (2007).

Those guidelines have been used and deemed reasonable by other federal courts, including in the Northern District of New York, in sentencing other defendants for similar firearms and robbery offenses. *See, e.g.*, *United States v. Walls*, 1:19-cr-00279-MAD, ECF No. 257 (Jan. 17, 2024) (sentencing defendant within the applicable Guidelines for armed bank robbery conspiracy); *United States v. Workman*, 5:21-CR-133 (GTS) (N.D.N.Y. Feb. 10, 2022), ECF No. 48 (imposing a Guideline sentence for possession of a firearm as a prohibited person on a defendant with white supremacist affiliations); *United States v. Jarvis*, 1:21-cr-00374-GTS (N.D.N.Y. April 29, 2022), ECF No. 34 (imposing a high-end Guideline sentence for possession of a firearm as a prohibited person). The Court should avoid disparity among defendants and sentence Kenna to a Guideline sentence commensurate his role in the crime.

## V.      CONCLUSION

Given the nature and characteristics of this offense involving the possession of firearms and a conspiracy to commit an armed bank robbery, the United States recommends that the Court impose a sentence according to the Sentencing Guidelines, that includes a high-end Guideline term of imprisonment followed by three years of supervised release.

## VI.      RESERVATION OF RIGHTS

The United States reserves the right to respond to arguments raised after filing this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. Fed R. Crim. P. 32(i)(1)(c) and 32(h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, except for the confidential sentencing recommendations submitted by the United States Probation Office.

Dated:  May 31, 2024                              Respectfully submitted,

                                                  CARLA B. FREEDMAN
                                                  United States Attorney

                                    By:     */s/ Alexander P. Wentworth-Ping*
                                                  Alexander P. Wentworth-Ping
                                                  Assistant United States Attorney
                                                  Bar Roll No. 701897

13